IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ISIDRO MENDIOLA,

    Plaintiff,

v.                                                              Case No. 17-1097-JWB

EXIDE TECHNOLOGIES, et al.,

    Defendants.

## **MEMORANDUM AND ORDER**

This case comes before the court on Defendants' motion for summary judgment. (Doc. 37.) The motions have been fully briefed and are ripe for decision. (Docs. 38, 42, 43.) Defendants' motion is GRANTED for the reasons stated herein.

**I.    Facts[1]**

Defendant Exide Technologies ("Exide") manufactures, sells, and recycles batteries that are used for transportation and industrial purposes. Exide has a manufacturing facility in Salina, Kansas. Plaintiff Isidro Mendiola began working for Exide's predecessor company in 1979. Plaintiff was employed by Exide and its predecessor until he was terminated effective June 15, 2016. Plaintiff worked as an operator in the formation department during his employment. As an operator, Plaintiff had several functions, including adding water and acid to batteries. There are three different manufacturing lines at the Exide facility in Salina: main line; commercial line ("comline"); and OMI line. (Doc. 38 at 2-3.)

From 2006 to 2015, Shawn Hogan was a formation supervisor at Exide and served as Plaintiff's supervisor. During that time, Plaintiff worked on the main line and the comline.

---

[1] The facts discussed herein are uncontroverted unless specifically identified as controverted.

1

Plaintiff also worked on the OMI line after it was installed around 2013 or 2014. There were times that Plaintiff caused damage to the OMI line conveyor chain during his employment. (Doc. 38 at 3, 5.)

While employed at Exide, Plaintiff usually received annual evaluations. The evaluations were generally satisfactory. (Doc. 42, Exh. 5.) The reviews did contain comments indicating areas for improvement. In 2004, Plaintiff's evaluation stated that he needed "to keep the line full at all times. Needs to do change overs as fast as possible." (Doc. 42, Exh. 5 at 16.) In 2009, his evaluation stated that he "does a good job on the input filer [sic] needs to watch the quality of batteries he puts on the line and watch his bathroom trips." (*Id.* at 20.) In 2011, his evaluation comments stated that he "is always watching quality. Needs to watch his bathroom breaks and work harder on keeping the line full." (*Id.* at 30.) In 2013, the comments stated that he "needs to listen and follow instructions … he has trouble with someone telling him how to do things. Needs to get faster at change-overs, and work better with his co-workers." (*Id.* at 31.) In 2014, the comments to his annual evaluation stated that he "does a good job on the input filler, needs to work on keeping the line full. Needs to always look at the quality of the product…." (*Id.* at 32.) In August 2015, he received a 2 rating, which means "partially meets performance expectations," for the categories quality of work and quantity of work. (*Id.* at 33.) The comments on his evaluation stated that he "needs to improve on quality. Floods, acid levels, SPC data entry. Need to learn the comline and take advice from co-workers." (*Id.*) Although his evaluations contained comments regarding his need for improvement in some areas, Plaintiff did not receive a written warning during the years 2008 to 2015. (Doc. 42 at 9, Exh. 3.)

Randy Bates was a lead in the formation department and formally became the supervisor in December 2015. At the time Bates was a lead, he received complaints from Plaintiff's co-

workers regarding Plaintiff's performance. Plaintiff was not aware that his co-workers made these complaints. Bates coached Plaintiff on multiple occasions regarding his performance although Bates could not recall specific dates. Prior to December 2015, Bates moved Plaintiff around to different positions to help on other lines that needed assistance.[2] (Docs. 38 at 4; 42 at 3-4.)

On December 6, 2015, Plaintiff was hospitalized for surgery on his big toe. Plaintiff was in the hospital for ten days. Plaintiff submitted Family Medical Leave Act ("FMLA") paperwork for his serious health condition. Exide approved Plaintiff's leave effective November 25, 2015. According to Exide's records, Plaintiff's first day out on FMLA leave was December 6. Exide's employee handbook has a return to work policy. The policy states that employees are required to bring a return to work slip after an absence for an illness of three days or more. Pursuant to the policy, Exide may require the company physician to be consulted. (Doc. 37-2 at 39.) On March 1, 2016, Plaintiff's doctor released Plaintiff to work half-days starting March 6. Plaintiff's doctor then released Plaintiff to work full time on March 7. Plaintiff did not return to Exide on March 6 or 7 as Exide required consultation with the company physician. Exide scheduled an appointment with its physician for March 9. Plaintiff was cleared to work by Exide's physician and his first day back was March 13. (Docs. 38 at 6-7; 42 at 5, 7-8; 43 at 3.)

When he returned to work, Plaintiff was placed in the same position, as a formation operator. Plaintiff had the same pay and supervisor. Bates testified that he moved Plaintiff to different lines on his return because Plaintiff's performance was below Exide's expectations. Bates set Plaintiff up with a trainer and tried Plaintiff on the OMI and comlines. Bates also offered to get anything that Plaintiff needed and asked him repeatedly if there was something that he could

---

[2] Although this fact is taken from Plaintiff's deposition, Plaintiff states that it is controverted because "Bates moved Mendiola to retaliate against him for taking FMLA leave." (Doc. 42 at 4.) The cited deposition testimony does not support this assertion.

3

do to help. Bates testified that Plaintiff's co-workers were frustrated by Plaintiff's performance and inadequate pace although there is no documentation regarding specific co-worker complaints. (Docs. 38 at 8-9; 42 at 4-5.)

Exide's productions standards increased over the time period that Plaintiff was employed. The formation department got leaner and it was determined that Exide could not have extra employees in that department. On April 18, Bates verbally counseled Plaintiff for unsatisfactory job performance. Plaintiff had failed on the main line and comline. Bates told Plaintiff that if he didn't meet the safety, quality and production standards on the OMI line that disciplinary action would be taken.[3] (Docs. 37-3 at 54 (Bates Email dated April 18, 2016); 38 at 10; 42 at 6.) Hogan met with Plaintiff to discuss a potential job opportunity in the distribution center but Plaintiff rejected the suggestion. Distribution center jobs are less demanding than the jobs in formation. Hogan did not tell Plaintiff that he would be terminated if he didn't transfer to the distribution center. (Doc. 38 at 9-11; 42 at 5-6, 9.)

On or about May 17, 2016, Plaintiff was issued a "last chance" warning. The warning states that he had received a verbal warning for performance on April 18 and that he had not been able to meet production and quality standards. The warning states that immediate improvement is required to avoid termination. (Doc. 37-2 at 86.) Although Plaintiff testified that he was not told it was a final warning and did not understand that his job was in jeopardy, Plaintiff's signature is on the document. (*Id.*; Plaintiff's Dep. 55:01-59:01, Doc. 37-2.)

During the week of May 30, 2016, Plaintiff was placed on the comline after he failed to meet production standards on the OMI line. Plaintiff then had several performance issues over a

---

[3] Plaintiff states that this fact is controverted in part but fails to cite to the record. (Doc. 42 at 6.)

4

four-day period that caused down time on the line and quality issues with several batteries.[4] (Doc. 37-2 at 87.) Plaintiff states that this fact is controverted "to the extent that Mendiola was unable to, or did not, adequately perform his job duties." (Doc. 42 at 6.) Plaintiff cites to his deposition at pages 55-56, 58 and 61. That deposition testimony at pages 55 and 56 discusses the last chance warning of May 17 and the fact that Plaintiff was moved between lines. Page 58 of Plaintiff's deposition discusses whether Plaintiff was ever told that his job was in jeopardy. On page 61, Plaintiff admits to causing damages to batteries. (Plaintiff's Dep. 61:13-20, Doc. 37-2.) Therefore, Plaintiff has not controverted the fact that he failed to meet production standards on the OMI line and that he was responsible for down time on the line during the week of May 30, 2016.

On June 7, 2016, a meeting was held with Plaintiff, Bates and Gary Strodtman, Exide's human resources manager. During the meeting, Plaintiff was terminated. (Docs. 38 at 12; 42 at 6-7.) Plaintiff was informed that he was terminated because he "didn't produce." (Plaintiff's Dep. 60:15-18, Doc. 37-2.) Plaintiff does not know who, if anyone, replaced him at Exide after his termination.

At some point after his termination, Plaintiff applied for disability compensation benefits. A Social Security Administration examiner found Plaintiff to be disabled and approved his application. The onset date of Plaintiff's disability was June 7, 2016. Plaintiff receives over $2,000 per month in benefits. Plaintiff testified that he was physically unable to work as of June 7, 2016, as stated in his application for disability benefits, and that he did not want to go back to work at Exide. (Plaintiff's Dep. 82:03-22, Doc. 37-2.)

---

[4] Plaintiff's written disciplinary report stated that he caused 40 floods to batteries, which occurs when the caps are not installed correctly and the battery overflows with water and "floods." (Doc. 38 at 4.)

5

Plaintiff filed this action against Exide and Bates alleging claims under the FMLA and the Age Discrimination in Employment Act ("ADEA"). Defendants now move for summary judgment on all claims.

**II.     Summary Judgment Standards**

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is "material" when it is essential to the claim, and the issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor. *Haynes v. Level 3 Commc'ns*, 456 F.3d 1215, 1219 (10th Cir. 2006). The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim. *Thom v. Bristol—Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548 (1986)). The nonmovant must then bring forth specific facts showing a genuine issue for trial. *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). The court views all evidence and reasonable inferences in the light most favorable to the nonmoving party. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

**III.    Analysis**

**A.  FMLA Retaliation**

The FMLA provides that a qualifying employee is entitled to "take up to twelve weeks of unpaid leave, without fear of termination." *Smothers v. Solvay Chemicals, Inc.*, 740 F.3d 530, 539 (10th Cir. 2014). It is a violation of the FMLA to retaliate against an employee who takes FMLA leave. *Id.* at 539-40 (citing 29 U.S.C. § 2615(a)(2); *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012)). A retaliation claim is analyzed under the *McDonnell-Douglas* framework. *Id.* at 540.

6

To establish a prima facie case of retaliation, Plaintiff must show (1) he "engaged in a protected activity by taking FMLA-protected leave;" (2) Defendants took materially adverse action(s) against him; and (3) the "circumstances permit an inference of causal connection between the action and the FMLA leave, in this case based on temporal proximity." *Id.* The burden then shifts to Defendants to prove a legitimate non-discriminatory reason for the action taken. If Defendants satisfy their burden, the burden then shifts back to Plaintiff to show that Defendants' explanation is a pretext for retaliation. *Id.* "A plaintiff demonstrates pretext by showing either that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence. In establishing pretext, an employee can show the employer's proffered reason was so inconsistent, implausible, incoherent, or contradictory that it is unworthy of belief." *Poulsen v. Humana Ins. Co.,* 675 F. App'x 811, 816 (10th Cir. 2017) (internal citations omitted).

In the pretrial order, Plaintiff asserted two claims based on adverse actions that were allegedly taken in retaliation for his FMLA leave: 1) termination and 2) refusing to reinstate him. (Doc. 39 at 9.) In their motion, Defendants addressed these two claims as well as retaliation based on Plaintiff's removal from the main line. (Doc. 38 at 15-17.) In response, Plaintiff stated that he was retaliated against in four ways: 1) immediate criticism upon return to work; 2) continuously reassigning Plaintiff to other duties; 3) issuing the final chance notice; and 4) termination. (Doc. 42 at 11.)

Under Local Rule 16.2(b), the pretrial order controls the course of the action unless it is modified. There has been no request for modification to include claims specific to all of these allegedly adverse actions; therefore, these additional claims are waived. *See Wilson v. Muckala*,

303 F.3d 1207, 1215 (10th Cir. 2002) ("claims, issues, defenses, or theories of damages not included in the pretrial order are waived.")[5]

1. **Prima Facie Case**

    a. **Refusing to Immediately Reinstate**

Defendants argue that Plaintiff cannot establish that the refusal to allow Plaintiff to return to work full-time on March 8 was an adverse action. Plaintiff was scheduled to see Exide's physician on March 9 and released to return to work on that day. Plaintiff does not respond to Defendants' argument on this claim. The FMLA specifically allows an employer to require a fitness for duty examination if it complies with the Americans with Disabilities Act. *See* 29 C.F.R. 825.312(h). Plaintiff does not contend that Defendants' request was unlawful. (*See* Doc. 42.) Therefore, Plaintiff has not shown that this action is adverse. Nor has Plaintiff shown that Exide's decision to require the examination was a pretext for retaliation.

Defendants' motion for summary judgment on Plaintiff's FMLA retaliation claim due to Exide's failure to immediately reinstate Plaintiff is granted.

    b. **Moving Plaintiff to Different Lines**

Defendants move for summary judgment on Plaintiff's claim of retaliation as a result of Plaintiff being moved to different lines. As discussed above, this claim was not presented in the pretrial order as a legal claim. Therefore, Defendants' motion on this issue is moot.[6]

    c. **Termination**

Plaintiff contends that he has stated a claim of FMLA retaliation based on his termination. Defendants argue that Plaintiff cannot establish causation and pretext.

---

[5] To the extent Plaintiff argues that these allegedly adverse actions support a finding of causation or pretext, they will be considered in that context. However, they will not be considered as independent claims of FMLA retaliation.
[6] Although the court has not considered the merits of this waived claim, Plaintiff's failure to establish pretext on his remaining FMLA retaliation claim, discussed *infra*, would have also resulted in the dismissal of this claim.

In order to satisfy his prima facie case, Plaintiff must show that the circumstances permit an inference of causal connection between the discipline and/or termination and the FMLA leave. *Smothers*, 740 F.3d at 540. Defendants argue that Plaintiff cannot rely on temporal proximity as his termination occurred almost three months after he returned from FMLA leave. The Tenth Circuit has held that a "six-week period between protected activity and adverse action may be sufficient, standing alone, to show causation, but a three-month period, standing alone, is insufficient." *Meiners v. Univ. of Kansas*, 359 F.3d 1222, 1231 (10th Cir. 2004). Here, Plaintiff was subjected to discipline approximately 5 weeks after his return from FMLA leave. Plaintiff was then subjected to discipline again, one month later, and ultimately terminated three months after his return from FMLA leave. Standing alone, the termination would not be sufficient to establish causation. *Id.* However, Exide's actions in disciplining Plaintiff on two occasions and then his ultimate termination is sufficient to establish causation. *See id.* at 1231-32 (causation may be established by pattern of adverse actions.)

The burden then shifts to Defendants to "articulate a legitimate, nondiscriminatory reason for the adverse employment" actions. *Id.* at 1229. Defendants assert that Plaintiff was disciplined and terminated due to poor performance. This is a legitimate, nondiscriminatory reason for the actions. The burden now shifts back to Plaintiff to demonstrate that Defendants' reason is pretextual. *Id.*

To show pretext, Plaintiff cannot rely on temporal proximity alone. Rather, Plaintiff must show that the "temporal proximity combined with the other factors demonstrate 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions,'" in Defendants' proffered reasons for disciplining and terminating Plaintiff that a reasonable factfinder could rationally consider them unworthy of credence. *Annett v. Univ. of Kansas*, 371 F.3d 1233, 1241 (10th Cir.

2004). Plaintiff argues that there are discrepancies between his evaluations prior to his FMLA leave and his return from FMLA leave. (Doc. 42 at 19.) Essentially, Plaintiff contends that he received favorable evaluations prior to FMLA leave and no written warnings and therefore, his written warnings and termination after his return from FMLA leave were done in retaliation for taking FMLA leave.

This court has previously held that a change in the evaluations of employee performance, by itself, does not raise an inference of pretext. *Zhou v. Pittsburg State Univ.*, 252 F. Supp. 2d 1194, 1218 (D. Kan. 2003), *aff'd sub nom. Wei-Kang Zhou v. Pittsburg State Univ.*, No. 03-3273, 2004 WL 1529252 (10th Cir. July 8, 2004). "To hold otherwise would be to hold that things never change, a proposition clearly without a basis in reality." *Id.* (citing *Shabat v. Blue Cross Blue Shield*, 925 F. Supp. 977, 988 (W.D.N.Y. 1996)). The fact that an employee with few, if any, performance issues during his career has taken FMLA leave does not mean that the employee cannot have performance issues after returning from leave. An "employee who requests FMLA leave [has] no greater protection against his or her employment being terminated for reasons not related to his or her FMLA request than he or she did before submitting the request." *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 978 (10th Cir. 2017).

That said, "evidence of pretext may include ... prior treatment of plaintiff." *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1174 (10th Cir. 2006). Plaintiff cites to *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1218 (10th Cir. 2002), for the proposition that "temporal proximity in addition to evidence that the employee's record was relatively clean prior to his protected activity, but suddenly drops after his protected activity, [is] sufficient to survive summary judgment." (Doc. 42 at 19.) The facts in *Garrett*, however, are in stark contrast to this case. While the court will not expend time discussing the significant factual differences, the Tenth

Circuit clearly stated that there were "inconsistencies and contradictions [] between Mr. Garrett's 1972 to 1989 evaluations and those from 1990 to 1993…" *Garrett*, 305 F.3d at 1219. Those inconsistencies and contradictions raised disputed issues of fact as to whether his "evaluations and ranking were truly the reason for the supervisors' actions towards their employee." *Id.*

In this case, however, Plaintiff has not shown inconsistencies and contradictions between his evaluations prior to leave and his discipline after leave. Plaintiff argues that the reason for termination is pretext because, although Defendants stated that his performance was inadequate prior to his leave, Defendants never issued any written warning or other discipline in recent years. Basically, Plaintiff claims that he had an "excellent record prior to his FMLA leave." (Doc. 42 at 17.) However, the record clearly supports a finding that there were performance issues prior to his leave as noted in the undisputed facts. In order to dispute Defendants' position that Plaintiff had performance issues prior to his FMLA leave, Plaintiff states that Hogan, Bates' supervisor, contradicted Bates and testified that the problems only started after Plaintiff's return from leave. (Doc. 42 at 9.) The record does not support this contention. Rather, the cited testimony stated that other co-workers started complaining after Plaintiff's return from FMLA leave. (Hogan Dep. 66:9-19, Doc. 37-4.) Plaintiff has not identified any inconsistencies between Hogan's and Bates' testimony.[7]

---

[7] Plaintiff also states that Hogan admitted that Plaintiff was a good employee until he returned from FMLA leave. (Doc. 42 at 17.) In support of this statement, Plaintiff cites to Hogan's deposition at page 48. Hogan was asked "When did you start to have a sense that Mr. Mendiola was no longer capable of doing his job?" Hogan responded: "After he came back from his FMLA was when I noticed him struggling." (Doc. 42 at 17.) Plaintiff's brief suggests that this testimony is evidence of "potential discriminatory motive" because "when pressed on why that was, Hogan could not give an answer." (Doc. 42 at 17.) There is no citation to the record for this assertion. The deposition transcript shows that the next question asked was about the OMI line in 2013, which Hogan answered. (Hogan Dep. 48:16-19, Doc. 37-4.) The court reviewed Hogan's deposition and located one similar question regarding Plaintiff's ability to perform. That question, however, was prior to the question cited on page 48. On page 47, Hogan was asked "when did you start to see or when did you start to believe that Mr. Mendiola was no longer fit to perform his job duties?" (Hogan Dep. 47:19-22, Doc. 37-4.) Hogan responded that he could not recall dates. *Id.* After a couple of questions regarding Plaintiff's 2014 annual review, counsel then asked the question cited in Plaintiff's brief to which Hogan responded that it was after Plaintiff's FMLA leave when Hogan noticed Plaintiff struggling. This testimony

11

After returning from leave, Plaintiff had performance issues. It is undisputed that Plaintiff's performance resulted in a significant number of flooded batteries over a four-day period preceding his termination. Moreover, although Plaintiff stated that the adequacy of his performance was in dispute, Plaintiff failed to cite to any evidence in the record that supported a finding that his performance was satisfactory at the time of his discipline or that the statements contained in the written discipline were false. No evidence suggests that Bates or Hogan or any other decision-maker lacked a genuine belief that Plaintiff was unable to perform his position. *Metzler*, 464 F.3d at 1179. Plaintiff has not raised a genuine issue of material fact regarding Defendants' explanation that Plaintiff was terminated due to his performance.

"While evidence of temporal proximity in combination with additional circumstantial evidence may give rise to [a] genuine issue of material fact regarding whether an employer offered a pretextual reason for terminating an employee," the record in this case indicates that Plaintiff was terminated for poor job performance.[8] *Id.*; *see also Richardson v. Gallagher*, 553 F. App'x 816, 829-30 (10th Cir. 2014). Plaintiff has not demonstrated that Defendants' stated reasons for termination "are so weak, implausible, inconsistent, incoherent, or contradictory as to support a reasonable inference that [Defendants] did not act for those reasons." *Id.*

Defendants' motion for summary judgment on this claim is granted.

## B. FMLA Interference

Plaintiff contends that Defendants interfered with Plaintiff's rights under the FMLA by "failing to reinstate Plaintiff into an equivalent position with the same working conditions, privileges and status." (Doc. 39 at 9.) To establish a prima facie case under an FMLA interference

---

does not suggest a discriminatory motive but rather Hogan's attempt to identify when he believed that Plaintiff could no longer perform his job.

[8] Although Plaintiff asserts that he was never told that he would be fired if he did not improve his performance, Plaintiff does not argue that the failure to advise him of this fact is somehow evidence of pretext.

12

theory, Plaintiff must show: "(1) that he was entitled to FMLA leave; (2) that some adverse action by the employer interfered with his right to take FMLA leave; and (3) that the employer's action was related to the exercise or attempted exercise of his FMLA rights." *Jones v. Denver Pub. Schs.*, 427 F.3d 1315, 1319 (10th Cir. 2005).

Defendants move for summary judgment on this claim on the basis that Plaintiff was not entitled to restoration as he sought to return to work after his leave was exhausted. (Doc. 38 at 24.) Plaintiff contends that Defendants are incorrect and that they miscalculated his leave. (Doc. 42 at 22.) The uncontroverted facts show that Plaintiff's first day of leave was December 6, 2015. Plaintiff argues that he was therefore entitled to FMLA leave up until March 6, which was the date that Plaintiff could return to work part-time. Defendants contend that Plaintiff has "erroneously equate[d] 12 weeks' leave with three months." (Doc. 43 at 9.) Defendants are correct. FMLA provides for "a total of 12 workweeks of leave during any 12-month period." 29 U.S.C. § 2612. Therefore, Plaintiff's FMLA leave expired on February 28, which was 12 weeks after December 6, and Plaintiff would have been required to return to work on February 29, 2016, to invoke the right to reinstatement.

"An employee is only protected under the FMLA if he 'reports for work with the required certification when [his] FMLA concludes.'" *Talkin v. Deluxe Corp.*, No. CIV.A. 05-2305-CM, 2007 WL 1469648, at *4 (D. Kan. May 18, 2007) (citing *Mondaine v. Am. Drug Stores, Inc.*, 408 F.Supp.2d 1169, 1205–06 (D. Kan. 2006) (citing cases)). Plaintiff's right to reinstatement under the FMLA expired when his FMLA leave expired on February 29, 2016. *Degraw v. Exide Techs.*, 744 F. Supp. 2d 1199, 1215 (D. Kan. 2010) (citing cases), *aff'd*, 462 F. App'x 800 (10th Cir. 2012); *McGregor v. Autozone, Inc.*, 180 F.3d 1305, 1308 (11th Cir. 1999); *Talkin*, 2007 WL 1469648 at *4–5; *Mondaine*, 408 F. Supp.2d at 1206.

Because Plaintiff did not return to work at the expiration of his FMLA, he was not entitled to restoration of his position under the FMLA.[9] *See id.* Defendants' motion for summary judgment on this claim is granted.

## C. ADEA Discrimination

Finally, Plaintiff contends that Defendants discriminated against Plaintiff in violation of the ADEA. To prove a claim of age discrimination, Plaintiff must show: "1) [he] is a member of the class protected by the [ADEA]; 2) [he] suffered an adverse employment action; 3) [he] was qualified for the position at issue; and 4) [he] was treated less favorably than others not in the protected class." *Jones v. Oklahoma City Pub. Sch.*, 617 F.3d 1273, 1279 (10th Cir. 2010) (citing *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 531 (10th Cir. 1998)).

Defendant moves for summary judgment on the basis that Plaintiff cannot establish the last two elements. There is no dispute that Plaintiff has not shown that he was treated less favorably than others not in the protected class. (Docs. 38 at 28; 42 at 25-26.) Instead, Plaintiff argues that the Tenth Circuit has "stated that a plaintiff may support a prima facie case of age discrimination by relying on pretext evidence 'if it indeed gives rise to an inference of actionable discriminatory intent.'" (Doc. 42 at 26, quoting *Kosak v. Catholic Health Initiatives of Colo.*, 400 F. App'x 363, 367 (10th Cir. 2010)). The court disagrees with Plaintiff's interpretation of *Kosak*. The Tenth Circuit discussed the burden as follows:

> In order to establish a prima facie case of discrimination under the ADEA, a plaintiff must ordinarily prove that: (1) she is within the protected age group; (2) she was doing satisfactory work; (3) she was discharged; and (4) her position was filled by a younger person…We have repeatedly emphasized that an ADEA plaintiff must ordinarily show that her position was filled by a younger person in order to make a prima facie case of discrimination under the *McDonnell Douglas* burden-shifting framework. Indeed, we have refused to address the extent to which there may be "extraordinary" situations when a

---

[9] Even had Plaintiff been entitled to restoration, summary judgment would be granted on the basis that Defendants satisfied their burden to show that they would have terminated Plaintiff for performance issues as discussed *supra*. *See Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 1006 (10th Cir. 2011).

14

plaintiff could prove a prima facie case without such a showing. We need not address that question here because there was no evidence of any such extraordinary circumstances presented in this case.

*Id.* at 366 (internal citations omitted).

The Tenth Circuit went on to find that the plaintiff did not establish pretext but specifically held that "without sufficient evidence to establish a prima facie case of discrimination, the district court was under no obligation to consider the legitimacy of SMC's reasons for firing Ms. Kosak." *Id.* at 366-67. In this case, Plaintiff has failed to show that he was treated differently than someone outside the protected class or that he was replaced by a younger person. Therefore, Plaintiff has not met his burden. Moreover, for the reasons stated above, Plaintiff has not established that Defendants' reason for termination was a pretext for discrimination.

Defendants' motion for summary judgment on Plaintiff's ADEA claim is granted.

**IV.     Conclusion**

Defendants' motion for summary judgment (Doc. 37) is GRANTED. The clerk is directed to enter judgment in favor of Defendants.

IT IS SO ORDERED this 31st day of October, 2018.

> \_\_s/ John W. Broomes_____
> JOHN W. BROOMES
> UNITED STATES DISTRICT JUDGE